IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ANTONIO LAMONT ALLISON, | ) | Civil Action No. 7:18cv00125 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| OFFICER BALL, et al., | ) | By: Michael F. Urbanski |
| Defendants. | ) | Chief United States District Judge |

Plaintiff Antonio Lamont Allison, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, against Unit Manager Turner and Officer Ball at Keen Mountain Correctional Center ("Keen Mountain").[1] Allison alleges that Officer Ball violated the Eighth Amendment by calling him a snitch and child molester in front of staff and other inmates. Defendants filed a motion to dismiss and Allison responded with a motion for summary judgment against Officer Ball. This matter is ripe for disposition. Having reviewed the record, the court concludes that defendants' motion to dismiss must be granted in part and denied in part, and Allison's motion for summary judgment must be denied.

I.

Allison alleges in his unverified complaint that, on multiple occasions, beginning on August 24, 2017 and continuing through November 29, 2017, in front of other inmates and staff, Officer Ball called Allison names such as, "snitching mother fucker," "hot mother fucker," and "child molester." Allison also alleges that Officer Ball told other inmates Allison's cell number and told his coworkers that he hated Allison and implied that Allison had filed grievances against them. On one occasion, Officer Ball was blowing up rubber gloves and popping them "as he was shooting at [Allison]."

---

[1] The court notes that Allison is no longer housed at Keen Mountain. He is now housed at Wallens Ridge State Prison.

1

Allison also alleges that other non-defendant staff and inmates called Allison a snitch and child molester, and that other inmates also threatened to physically attack, stab, or kill him. Allison claims that on November 29, 2017, one inmate "was trying to pay" another inmate to "assault [him] and get [him] out of the pod." He also claims that other inmates wrote grievances under his name.

On January 9, 2018, inmate Walker, an "unstable, violent offender" with a "history of violence," was assigned to Allison's pod. On January 12, 2018, Walker "violen[tly] attacked" Allison multiple times in his cell, by punching, kneeing, and biting him. Later that evening, Allison reported the incident to the building sergeant and received medical treatment.

On January 25, 2018, and continuing through March 4, 2018, Officer Ball called Allison derogatory names again and said that Allison: likes to fight, was "scared to death," wrote request forms on staff, and should go back to general population so that "they can kill his 'snitching ass.'" In addition, during that same time period, other staff and other inmates called him derogatory names and laughed at him.[2]

In his complaint, Allison makes no allegations against and describes no conduct committed by defendant Unit Manger Turner. The only reference to Unit Manager Turner is in a grievance response attached to the complaint. In the response, the Warden of Keen Mountain addresses Allison's complaints that Officer Ball called him names on August 24, 2017 and that another officer called him names on August 26, 2017. With regard to Unit Manager Turner, the Warden states, "Unit Manager Turner states after investigating this and speaking to the staff

---

[2] Allison also vaguely alleges that unnamed staff contaminated his meals and retaliated against him; however, he does not allege that either of the named defendants were involved in these actions. Moreover, his vague and conclusory allegations are insufficient to support a § 1983 claim. "While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) (citation omitted).

involved . . . . all staff have been supervised and have been trained in the proper way to conduct themselves while assigned to C-Building. He reports he can find no evidence the staff have treated you in an unprofessional manner."

## II.

Defendants Unit Manager Turner and Officer Ball filed a motion to dismiss Allison's complaint. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," id., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly,

550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe pro se pleadings liberally. See, e.g., Boag v. MacDougall, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a pro se complaint raising civil rights issues." Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). "A pro se plaintiff still must allege facts that state a cause of action." Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

### III.

To state a claim under 42 U.S.C. § 1983, a plaintiff must show direct personal involvement by each particular defendant. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"); see also Garraghty v. Va. Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995). That is, as the Supreme Court has cautioned, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Here, however, Allison has not identified any specific, alleged misconduct with respect to Unit Manager Turner. To the extent he could be complaining that Turner did not adequately investigate his allegations, any such claim fails. See Charles v. Nance, 186 F. App'x 494, 495 (5th Cir. 2006) (holding that alleged failure to investigate a grievance "fails to assert a due

4

process violation"); Sweat v. Rennick, No. 9:11-2908, 2012 U.S. Dist. LEXIS 55200, at *5, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); Lewis v. Williams, Nos. 05-13, 05-51, 05-52, 2006 U.S. Dist. LEXIS 8444, at *18-19, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue."). Moreover, there are insufficient allegations to support a supervisory liability claim against Unit Manager Turner. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Accordingly, the court will grant defendants' motion to dismiss as to any claims against defendant Unit Manager Turner.

### IV.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and citation omitted). A prisoner who alleges deliberate indifference under the Eighth Amendment arising from failure to protect must satisfy two requirements, an objective component and a subjective component. Id. at 834. "First, the deprivation alleged must be, objectively, sufficiently serious," (objective component) and second, "the prison official must have a sufficiently culpable state of mind" (subjective component). Id. (quotation marks and citation omitted). To satisfy the objective component, a prisoner must establish an "extreme deprivation," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003), which requires the prisoner to "allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." Odom v. S. Carolina Dept. Of Corr., 349 F.3d 765, 770 (4th Cir. 2003). To establish the subjective component, a prisoner must show that the prison official acted with "deliberate indifference,"

5

which entails "something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 834-35. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'Lonta, 330 F.3d at 634.

The Fourth Circuit has observed, "[i]t is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'" Miller v. Leathers, 913 F.2d 1085, 1088 n.1 (4th Cir. 1990)). Evidence that a prison official exposed a prisoner as a snitch is sufficient to establish a substantial risk of serious harm. Jordan v. Hooks, Civil Action No. 6:13-cv-2247-BHH, 2015 U.S. Dist. LEXIS 131011, at *8-11, 2015 WL 5785504, at *3-4 (D.S.C. Sep. 29, 2015); see also Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008); Benefield v. McDowall, 241 F.3d 1267 (10th Cir. 2001); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989); Harm v. Berry, 728 F.2d 1407, 15409 (11th Cir. 1984); White v. Fox, 470 Fed. Appx. 214, 220 (5th Cir. 2012)). Courts have allowed plaintiffs to survive summary judgment where the plaintiff alleges only an increased risk of attack or serious psychological or emotional injury from such risk. See, e.g., Benefield, 241 F.3d at 1271-72 (rejecting the government's argument that a prisoner's claim was subject to dismissal in the absence of physical injury); Williams v. Thomas, Civil Action No. 12-01323, 2013 U.S. Dist. LEXIS 60430, at *23, 2013 WL 1795578, at *6 (E.D. Pa. Apr. 29, 2013) ("the mere act of labeling a prisoner a snitch constitutes a substantial risk of harm"). Further, both the Supreme Court and the Fourth Circuit have indicated that a prisoner can bring an Eighth Amendment claim to challenge harm that is certain or very likely in the future, even where the harm has not yet materialized. See Helling v. McKinney, 509 U.S. 25, 33 (1933) ("That the Eighth Amendment protects against future harm to

6

inmates is not a novel proposition. . . It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."); Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973) ("A prisoner has a right, secured by the Eighth and Fourteenth Amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief."). In this case, in addition to the risk of harm, Allison also alleges that he was, in fact, attacked. Although he has not proven that the attack was caused by Officer Ball's actions, he need not prove to survive a motion to dismiss. See Jordan, 2015 U.S. Dist. LEXIS 131011, at *10, 2015 WL 5785504, at *3.

With regard to deliberate indifference, because the risk attendant in being labeled a snitch is well-understood and readily apparent to corrections officials, facts indicating that an official intentionally exposed an inmate as a snitch are sufficient to establish deliberate indifference. Jordan, 2015 U.S. Dist. LEXIS 131011, at *10, 2015 WL 5785504, at *4 (citing Makdessi v. Fields, 789 F.3d 126, 136 (4th Cir. 2015) (noting that "the subjective 'actual knowledge' standard required to find deliberate indifference may be proven by circumstantial evidence that a risk was so obvious that it had to have been known."). In this case, Allison alleges that Officer Ball called him a snitch under circumstances suggesting that he intended to communicate the label to other prisoners and staff. Accordingly, the court finds that Allison's allegations state a plausible claim for relief under the Eighth Amendment.

Officer Ball argues that he is entitled to qualified immunity. "The doctrine of qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Danser v. Stansberry, 772 F.3d 340,

7

345 (4th Cir. 2014). "The doctrine protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Smith v. Gilchrist, 749 F.3d 302, 307 (4th Cir. 2014) (quoting Stanton v. Sims, 134 S.Ct. 3, 4 (2013)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). "An official asserting the defense of qualified immunity bears the burden of proof with respect to that defense." Danser, 772 F.3d at 345.

The court finds that Officer Ball is not entitled to qualified immunity. The court has already found that Allison has stated a violation of a constitutional right and, thus, the only remaining issue is whether the right to be free from the substantial risk of harm attendant with being exposed as a snitch to other prisoners was clearly established. The court finds that it was. Jordan v. Hooks, Civil Action No. 6:13-cv-2247-BHH, 2015 U.S. Dist. LEXIS 131011, at *13, 2015 WL 5785504, at *4 (D.S.C. Sep. 29, 2015); Irving, 519 F.3d at 451 ("We affirm that portion of the district court's order which denied qualified immunity to [the corrections officer] with respect to the death threats and to the labeling of [the prisoner] as a snitch."). Accordingly, the court finds that Officer Ball is not entitled to qualified immunity and, therefore, will deny the motion to dismiss as to the failure to protect claim against Officer Ball.

## V.

In response to defendants' motion to dismiss, Allison filed a motion for summary judgment against Officer Ball. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact *and the movant is entitled to judgment as a matter of law*." Id. (emphasis added). A court accepts as true the *evidence* of the non-moving party and resolves all internal conflicts

and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (emphasis added). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); Sakaria v. Trans World Airlines, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment). A plaintiff may not amend a complaint through argument in a brief opposing summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

Although Allison submitted an affidavit with his motion for summary judgment, most all of the affidavit consists of labels, conclusions, and case law. Beyond those things, his affidavit states only that he was "especially likely" to be assaulted by Walker (although he does not explain why), that Walker violently assaulted him, and that he continues to experience "severe" pain and suffering. Labels and conclusions are insufficient to even state a claim, much less win summary judgment. See Iqbal, 556 U.S. at 678. With that in mind, the court concludes that the evidence in his affidavit does not show that he is entitled to judgment as a matter of law. Accordingly, the court will deny Allison's motion for summary judgment.

## VI.

For the foregoing reasons, the court will grant in part and deny in part defendants' motion to dismiss and will deny Allison's motion for summary judgment.

**ENTER**: This <u>5th</u> day of March, 2019.

/s/ Michael F. Urbanski
Chief United States District Judge